IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 02-21257
_____

CRAIG NEIL OGAN,                                    Petitioner-Appellant,

versus

JANIE COCKRELL, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, INSTITUTIONAL
DIVISION,                                          Respondent-Appellee.
_____

On Application for a Certificate of Appealability
Appeal from the United States District Court
for the Southern District of Texas
No. 02-4331
_____

_____

November 19, 2002

Before JOLLY, EMILIO M. GARZA, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Petitioner-Appellant Craig Neil Ogan, who is scheduled to be executed at 6:00 p.m. today, November 19, 2002, seeks a certificate of appealability ("COA") in order to appeal the Order of the United States District Court for the Southern District of Texas denying his Motion for Stay of Execution, Motion for Appointment of Counsel and Motion for Constitutionally Adequate Determination of Mr. Ogan's Present Competency To Be Executed. Ogan's motions to the district court were premised on his argument that he is incompetent

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

to be executed under the standards set forth in <u>Ford v. Wainwright</u>, 477 U.S. 399 (1986). We decline to issue a COA.

I

Ogan was convicted and sentenced to death for the capital murder of a police officer. On direct appeal, Ogan challenged (1) the sufficiency of the evidence demonstrating his deliberate conduct in causing the officer's death; (2) the sufficiency of the evidence establishing his future dangerousness; and (3) the effectiveness of his trial counsel at the penalty stage regarding counsel's requested jury instruction on mitigation. The Texas Court of Criminal Appeals affirmed Ogan's conviction and sentence. On December 21, 1993, the United States Supreme Court denied Ogan's petition for a writ of certiorari.

In his initial state habeas application, Ogan claimed that his trial counsel rendered ineffective assistance by failing to employ a mitigation specialist and by failing to investigate his history in an effort to discover mitigating evidence. In April 1999, the Texas Court of Criminal Appeals denied habeas relief based on the trial court's findings and conclusions.

In his first federal habeas petition, filed on August 3, 1999, and supplemented on December 30, 1999, Ogan sought relief on five grounds: (1) insufficient evidence to sustain the jury's affirmative answer to the statutory punishment issue on deliberate conduct; (2) insufficient evidence to sustain the jury's

2

affirmative answer to the statutory punishment issue on future dangerousness; (3) ineffective assistance of counsel based on trial counsel's limitation of the jury instruction on mitigation; (4) ineffective assistance of counsel based on trial counsel's failure adequately to develop and present mitigating evidence; and (5) Ogan's purported incompetency to stand trial. Ogan did not raise the claim that he was incompetent to be executed under the Ford standard.

The district court rejected Ogan's two insufficiency-of-the-evidence claims regarding the special issues on the merits. The district court also rejected Ogan's claim of ineffective assistance of counsel regarding the jury instructions on mitigating evidence. The district court found that Ogan had failed to present his claim of lack of competency to stand trial on direct review, or during the state habeas proceedings and that he had failed to demonstrate cause and prejudice for this failure. Nevertheless, the court considered the claim on the merits and rejected it. The district court also applied the procedural bar to Ogan's claim that his trial counsel was ineffective for failing to recognize the extent of his mental health problems. The district court rejected Ogan's remaining "miscellaneous" ineffective assistance claims regarding state trial and habeas counsel and the Texas state courts' obligations to provide him with effective counsel. The court based its rejection of these claims on either a procedural bar, the

3

merits, or both.  The district court refused to grant a COA even though Ogan had not yet requested one.

Ogan requested a COA from our court for the following claims: (1) the state courts violated his rights to meaningful access to the courts, equal protection, and due process by refusing to remedy their earlier error of appointing him ineffective habeas counsel; (2) he was incompetent to stand trial; (3) trial counsel rendered ineffective assistance by failing to recognize the extent of his mental health problems; and (4) trial counsel was ineffective in failing to request an adequate and accurate jury instruction on mitigating evidence and in failing to object to the "nullification instruction" given by the trial court during the sentencing phase of his trial.  Our court denied a COA for each of those claims. Ogan v. Cockrell, 297 F.3d 349 (5th Cir. 2002), cert. denied, ___ U.S. ___ (U.S. Nov. 19, 2002) (No. 02-7261).

On August 1, 2002, the state court scheduled Ogan's execution for today, November 19, 2002.  On November 15, 2002, Ogan filed a successor application for writ of habeas corpus in the state trial court.  He argued that he is entitled to relief under Penry v. Johnson, 121 S.Ct. 1910 (2001), because the "jury nullification" instruction at the punishment phase of his trial violated the Eighth, Fifth, and Fourteenth Amendments.  He also argued that he was incompetent to stand trial.  Today, November 19, the Texas Court of Criminal Appeals held that Ogan's successor application

4

failed to satisfy the requirements of Art. 11.071, Sec. 5(a), V.A.C.C.P. It therefore dismissed the application as an abuse of the writ.

Today, Ogan has filed a number of last-minute requests for relief in various courts. His application for stay of execution filed in the Supreme Court of the United States was denied this afternoon. Ogan v. Cockrell, ___ U.S. ___ (U.S. Nov. 19, 2002) (No. 02-7261). As we have earlier stated, the district court also denied his motion for stay of execution, motion for appointment of counsel, and motion for constitutionally adequate determination of his present competency to be executed.

In addition, Ogan today filed in the state trial court a Motion to Seek Determination of Competency to Be Executed. In support of that motion, Ogan relied on his mental health history, including his inability to control his anger during his enlistment with the Navy; his frequent arguments with his father; his referral to a mental health worker when he started "acting crazy" in the fourth grade; his frequent fights with other children; and his discharge from the Navy after being diagnosed as having a passive aggressive personality disorder. He attached to the motion the Caldwell Report, which evaluated an MMPI conducted by a psychiatrist, Dr. Fason, in 1990, prior to his trial. According to the Caldwell Report, Ogan's profile indicated a "paranoid personality makeup with a currently borderline or overtly psychotic

5

state." He also attached to the motion the records of his evaluation by psychologists with the Texas Department of Criminal Justice, Institutional Division, following his conviction. The prison psychologists noted the same problems as Dr. Fason and noted that Ogan was delusive as well. In addition, he attached to his motion an affidavit of Dr. Paula Love, who made the following conclusions based on her evaluation of Ogan's records: Ogan consistently displays thinking processes that are marred by delusion; he has "unchangingly displayed symptoms of a paranoid personality disorder"; she has "serious doubt about [Ogan's] ability to rationally relate events in which he displays aggression"; and "he has a serious mental disorder that needs to be explored."

Finally, in support of his claim that he is presently incompetent to be executed, Ogan relied on anecdotal evidence in the form of affidavits by two defense investigators. Although neither of those investigators is a mental health professional, both of them stated that it is apparent to them that he is seriously mentally ill. One of the investigators, Ms. Church, stated that it was very difficult for her to have a rational discussion with Ogan either about the offense or his sentence. She stated further that Ogan "sees the world as a giant conspiracy to kill him." She concluded that, "[w]hile he understands that his offense was the murder of Officer Boswell, his delusional system

6

makes him believe that he is innocent and that he killed the officer because the officer was going to harm him, a belief unsubstantiated by any facts." The other investigator, Richard Reyna, stated in his affidavit that he, too, believes that Ogan is seriously mentally ill. Reyna concluded:

> [I]t is impossible to carry on a coherent rational conversation with him.... [H]is responses to my questions make absolutely no sense; they are in no way responsive to the subject of my questions.... [H]e sees himself as the victim of a conspiracy, a conspiracy that includes his attorney and all who have been attempting to work for him. He cannot discuss any item except in terms of this conspiracy.... [H]e cannot accept or discuss his pending execution.... [W]hen I attempted to discuss final arrangements with him, he simply could not accept the fact that the execution was imminent or even a possibility.... <u>[H]e doesn't even understand why he is being executed, except that it is for the murder of Officer Boswell.</u> He insists that the execution is the result of a conspiracy between his lawyers and the system and maintains that he is innocent, at least to the extent that the shooting was in self defense.
>
> His behavior is what I would term paranoid and it is a state of mind that is deteriorating rapidly by the day. My review of his case establishes to my satisfaction that this paranoid response occurs whenever he is under stress and his impending execution makes this problem even more severe.

(Emphasis added.)

The motion refers to, but does not describe, an affidavit from an attorney, Katherine Haenni, who has visited with Ogan. Ogan's motion for stay of execution filed in the district court states

7

that Ms. Haenni's conclusions about Ogan's mental health are similar to the conclusions of Church and Reyna.

The motion requested that the state trial court appoint two disinterested experts under the statute, TEX. CRIM. PRO. CODE ANN. § 46.05 (Vernon 2002) (setting forth the procedure for determining competency to be executed), to evaluate Ogan and that counsel be provided funds with which to obtain the services of their own expert. Today, the state trial court denied the motion, finding that Ogan failed to make a substantial showing of incompetency to be executed.

Finally, as earlier stated, Ogan today filed in federal district court a Motion for Stay of Execution, Motion for Appointment of Counsel and Motion for Constitutionally Adequate Determination of Mr. Ogan's Present Competency To Be Executed. Ogan argues that the state court process for determining his competency to be executed did not comport with the minimum standards of due process required by Ford v. Wainwright, 477 U.S. 399 (1986), because the trial court refused to provide funds to Ogan's counsel to enable him to obtain the services of his own mental health expert. The district court held that Ogan's failure to raise a Ford claim in his first federal habeas petition rendered his current filing a successive petition for writ of habeas corpus, and that Ogan could not file it in the district court until he had "move[d] in the appropriate court of appeals for an order

8

authorizing the district court to consider the application."  28 U.S.C. § 2244(3)(A) (2000).  Therefore, the court denied Ogan's request for relief on the ground that it lacked jurisdiction.

The district court denied Ogan's request for a COA on the question of whether the court had jurisdiction to rule on his claims.  Ogan now appeals to this court seeking a COA on his jurisdictional question.

## II

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a petitioner must obtain a COA before he can receive full appellate review of the lower court's denial of habeas relief. See 28 U.S.C. § 2253(c)(1)(A) (2000) ("Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court.").  We may grant a petitioner's request for a COA only if he makes a "substantial showing of the denial of a constitutional right."  Id. § 2253(c)(2).

To make such a showing, Ogan must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Dowthitt v. Johnson, 230 F.3d 733, 740 (5th Cir. 2000), cert. denied, 532 U.S. 915 (2001) (quoting Slack v.

9

McDaniel, 529 U.S. 473, 483-84 (2000)). Where, as here, the district court has denied the petitioner's claim on procedural grounds, the petitioner must demonstrate both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling" in order to obtain a COA. Slack, 529 U.S. at 484.

III

The district court's procedural ruling in this case was that it lacked the jurisdiction to consider Ogan's request for relief because he was presenting it as part of a successive habeas petition without first getting permission to do so as required by § 2244(3)(A). As we have already stated, Ogan has previously filed a petition for habeas relief in federal court; that petition was denied. Therefore, the district court disposed of Ogan's petition on appropriate procedural grounds unless it would be debatable among jurists of reason whether Ogan's petition was actually a successive petition within the meaning of the AEDPA.

The AEDPA does not define "second or successive." However, this court has held that a petitioner's application is "second or successive when it: (1) raises a claim challenging the petitioner's conviction or sentence that was or could have been raised in an earlier petition; or (2) otherwise constitutes an

10

abuse of the writ." United States v. Orozco-Ramirez, 211 F.3d 862, 867 (5th Cir. 2000). Ogan argues that this is not a successive petition because he could not have raised the issue in his initial habeas petition. He argues that, had he done so, the district court would have been forced to dismiss his petition for containing both exhausted and unexhausted claims. Rose v. Lundy, 455 U.S. 509 (1982). Upon dismissal, he would have returned to state court and the Court of Criminal Appeals would have again found his Ford claim unripe. Ultimately, he argues that he would have been foreclosed from raising any habeas petition at all until an execution date had been set (thereby making his Ford claim ripe for appeal).

However, nothing in Rose says that an argument must have been adjudicated to be found exhausted. Exhaustion requires only that the state court be provided with a "fair opportunity" to consider the claim. Duncan v. Henry, 513 U.S. 364, 365 (1995). If Ogan had raised the claim in the state court and then presented his claim in his original federal habeas petition, the district court could have dismissed it as unripe without running afoul of Rose's proscription against mixed habeas petitions.

The Supreme Court has held that a petitioner who raises a Ford claim in his original petition and then re-raises it in a later petition once it is ripe for adjudication (because the execution date is imminent) is not presenting a "second or successive" petition within the meaning of § 2244. Stewart v. Martinez-

11

*Villareal*, 523 U.S. 637, 644 (1998). Instead, the *Ford* claim is treated "in the same manner as the claim of a petitioner who returns to a federal habeas court after exhausting state remedies." *Id*. The Court left open the question of whether a petitioner who did *not* present his *Ford* claim in his original petition, but raised it later on, was raising it in a successive petition. *Id*. at 645 n.1.

However, the well-established law of this circuit is that a petitioner who fails to raise his *Ford* claim in his original habeas petition may not later raise it as part of a subsequent petition. *In re Davis*, 121 F.3d 952, 955-56 (5th Cir. 1997). While the vitality of *Davis* was questioned after *Stewart*, we recently reconsidered *Davis* in the light of *Stewart* and reaffirmed the *Davis* holding. *Richardson v. Johnson*, 256 F.3d 257, 258-59 (5th Cir. 2001).

In *Richardson*, we considered the argument that § 2244 should not apply to *Ford* claims because they cannot become ripe until execution is imminent. We noted that accepting such an argument "would mean as a practical matter that no *Ford* claim would need to be presented in a first filed habeas, given that state courts, in part at our urging, now seldom set execution dates until after the first round of appeals and habeas." *Id*. at 259.

Furthermore, focusing on the first *Slack* inquiry -- whether jurists of reason would find it debatable whether the petition

12

states a valid claim of the denial of a constitutional right -- like the petitioner in Richardson, Ogan here has pointed "to nothing which shows that he is presently incompetent to be executed." Id. His last-minute motion for a competency determination, filed today in the state trial court, relies primarily on the affidavits of two defense investigators to support his claim that he is presently incompetent to be executed. Reyna's affidavit, excerpts of which we have quoted previously, indicates that Ogan "know[s] the fact of [his] impending execution and the reason for it." Ford v. Wainwright, 477 U.S. 399, 422 (Powell, J., concurring). The primary thrust of Ogan's motions is an argument that the state court's procedure was unconstitutional because it failed to permit him to be evaluated by his own expert. However, we have previously determined that the statutory procedure under § 46.05 is constitutionally adequate and that the defendant has no right to an expert of his own choosing. Caldwell v. Johnson, 226 F.3d 367, 370 (5th Cir.), cert. denied, 530 U.S. 1298 (2000).

IV

It is not debatable among jurists of reason whether Ogan was presenting his Ford claim as part of a successive habeas petition. Therefore, the district court properly refused to rule on Ogan's motions because he had failed to apply for permission to file a successive petition as required by § 2244(3)(A). We deny his request for a COA. To the extent that his request for a COA may

13

also be construed as a motion for stay of execution, it is also denied.

14